**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.: 03-cv-01338-REB-MEH

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

GLEN W. HILKER, and
LARRY M. BAKER,

        Defendants,

TRICORD LLC,

        Relief Defendant.

## ORDER IMPOSING CIVIL PENALTY

**Blackburn, J.**

This matter is before me on the following motions: 1) **Plaintiff's Motion for Determination of Civil Penalty Against Defendant Larry M. Baker** [#130]; and 2) **Plaintiff's Motion for Determination of Civil Penalty Against Defendant Glen W. Hilker** [#131], both filed July 7, 2006.  At a hearing held on January 5, 2007, I heard oral argument concerning the plaintiff's request for imposition of a civil penalty against defendant Hilker.  Defendant Baker did not seek a hearing on the civil penalty issue.  Both motions are granted on the terms stated in this order.

## FACTS

This is a civil enforcement action brought by the Securities and Exchange Commission (SEC) against defendants Larry M. Baker, Glen W. Hilker, and relief defendant Tricord, LLC.  Defendants Baker and Hilker both consented to the entry of an

order of permanent injunction in this case. I entered an order of permanent injunction as to Hilker [#110] on October 13, 2005 (*Hilker Injunction Order*). I entered an order of permanent injunction as to Baker [#119] on November 28, 2005 (*Baker Injunction Order*). Hilker and Baker both consented to the specific terms of the order of permanent injunction that was entered against them. The orders of permanent injunction both provide that the defendants are "precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint," and that "the allegations of the Complaint shall be accepted as and deemed true by the Court" solely for the purposes of resolving a motion by the plaintiff for the imposition of a civil penalty. *Hilker Injunction Order*, p. 4; *Baker Injunction Order*, p. 4.

In the complaint, the SEC alleges that Hilker and Baker, through defendant HB Investors LLC (HBI)

> collectively raised over $4.7 million on behalf of defendant Project Dacono LLC ("PDL") for the purchase and development of real estate located in Dacono, Colorado. Mr Hilker and Mr. Baker raised these funds by offering and selling PDL and HBI securities to at least thirty-five investors located throughout several states.
>
> In raising these funds, PDL, HBI, Mr. Hilker, and Mr. Baker made numerous false and misleading statements to investors, primarily concerning the use of investor proceeds. In fact, only approximately $1.7 million of the funds raised were actually used for the purchase and development of the Dacono property. The remaining $3 million of investor proceeds was used by Mr. Hilker and Mr. Baker for their own personal use, was diverted to alter ego entities they controlled . . . was invested in risky business ventures unrelated to the Dacono property and was used for payment of Ponzi-type interest payments to other investors.
>
> \* \* \* \*
>
> Defendants Hilker, Baker, PDL, and HBI, directly or indirectly, with scienter, in the offer or sale of securities . . . have employed . . . devices, schemes or artifices to defraud.

*Complaint*, ¶¶ 1, 2, 43. Based on these and other allegations, the SEC asserted claims

for violation of Section 17(a)(1),(2), and (3) of the Securities Act of 1933 (Securities Act), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and Rule 10(b)(5) of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.  In short, for the purpose of the SEC's motions for determination of civil penalty, I must conclude that both Hilker and Baker, acting with scienter, defrauded investors in the PDL and HBI securities sold by Hilker and Baker, and that Hilker and Baker diverted substantial portions of those investors' funds to their personal use, or to the use of entities under the control of Hilker and Baker.

The precise amount of the losses suffered by investors who were defrauded by Hilker and Baker is not clearly indicated in the record in this case.  In the Hilker Injunction Order, the court ordered Hilker to disgorge $727,950, representing profits gained as a result of the conduct alleged in the complaint, and prejudgment interest on that amount of $94,241.38.  In the Baker Injunction Order, the court ordered Baker to disgorge $960,433.00, representing profits gained as a result of the conduct alleged in the complaint, and prejudgment interest on that amount of $124,338.93.  Nothing in the record indicates that either defendant has made any payment on these obligations.

In his supplement to his response to the SEC's motion [#137], filed January 4, 2007, Hilker reports that he has made regular monthly payments of $100 per month to investor Vance Brown.  Hilker says he has made these monthly payments from April, 2006, to present based on his settlement agreement with Brown.  Hilker entered into this agreement to settle a civil case brought by Brown in state court.  Hilker also reports that he has transferred stock certificates to FMF/Silver Peaks in an effort to satisfy a judgment held by FMF against Hilker, and to satisfy his payment obligation to the SEC in this case.  Those stock certificates have not been valued, and, thus, it is not clear

whether or not FMF or the SEC will realize any value from this transfer.  Hilker also reports that he lost ownership of his house to one of the PDL investors, and that he owes debts of approximately two million dollars.  Mr. Hilker is not employed and has no income.  His wife is employed, and most of the family expenses are paid from her income.

Baker reports that he lost more than one million dollars of his personal assets in the scheme described in the complaint.  *Response* [#132], filed July 25, 2006.  He contends that he never solicited funds from any of the investors, and did not commit fraudulent conduct.  *Id*.  Baker's contentions that he did not solicit funds or commit fraudulent conduct contradict the factual allegations in the complaint.  I must and will disregard these contentions for the purpose of determining an appropriate civil penalty.

### STANDARD OF REVIEW

Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), contain the civil penalty provisions applicable to the two acts.  The civil penalty provisions are identical.  "The amount of the penalty shall be determined by the court in light of the facts and circumstances."  15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(A).  These provisions provide for three tiers of civil penalties, and the SEC seeks third tier penalties in this case.  A third tier penalty for each violation of the Securities Act and Exchange Act shall not exceed the greater of $120,000 for a natural person or the gross amount of pecuniary gain to the defendant as a result of the violation, if the violation involved fraud or deceit and the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.  15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(A) (third tier penalty amounts adjusted by 17 C.F.R. § 201.1002; 17 C.F.R., Part 201,

Subpart E, Table II). The civil penalty provisions were enacted by Congress "to achieve the dual goals of punishment of the individual violation and deterrence of future violations." *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996).

## ANALYSIS

The SEC seeks a third tier penalty in the maximum amount of $120,000, but does not base the amount of the proposed penalty on evidence of the defendants' pecuniary gain. The SEC argues that Baker and Hilker's violations involved fraud, deceit, or manipulation. The SEC argues also that Baker and Hilker's fraudulent conduct created a significant risk of substantial losses to the investors defrauded by Baker and Hilker. Taking the allegations in the complaint as true, as I must for the purpose of determining a civil penalty in this case, I must conclude that Baker's and Hilker's violations involved fraud and deceit, and that the violations created a significant risk of substantial losses to other persons. The SEC argues that a third tier penalty is necessary to punish Baker and Hilker, and to provide the appropriate deterrent effect. There is no indication that any criminal action has been or will be brought against Hilker or Baker based on their actions as described in the complaint.

**Hilker** - The record reflects that Hilker generally has accepted responsibility for the conduct alleged in the complaint, and has provided some assistance to the plaintiff in resolving the issues presented in the complaint. Hilker has not required the SEC to prove its case against him. Rather, he agreed to stipulate to the key facts, and to the amount of disgorgement that is justified in light of those facts. Hilker has made some small efforts to make restitution to at least one victim of the scheme. His personal financial circumstances currently are difficult. Those difficult circumstances appear to be the direct, natural, and predictable results of Hilker's fraudulent conduct, as

described in the complaint.  Hilker argues that these adverse financial circumstances are a substantial punishment for his fraudulent conduct, and are a punishment that he will continue to suffer for some time.

    **Baker** - The record reflects that Baker generally has accepted responsibility for the conduct alleged in the complaint, and has provided some assistance to the plaintiff in resolving the issues presented in the complaint.  Baker has not required the SEC to prove its case against him.  Rather, he agreed to stipulate to the key facts, and to the amount of disgorgement that is justified in light of those facts.  The state of Baker's personal financial circumstances are not clear on the current record.  Baker claims that he lost over one million dollars of his own money in the PDL scheme.  Assuming this is true, this difficult circumstance is a direct, natural, and predictable result of Baker's fraudulent conduct as described in the complaint.  Implicitly, Baker appears to argue that this loss is a substantial punishment for his fraudulent conduct.

    I conclude that some level of punishment, other than the punishment these defendants have inflicted on themselves, is necessary to serve the purposes of the Securities Act and the Exchange Act.  Additionally, the purpose of deterrence also must be served.  The defendants' self-imposed punishment may act as a substantial deterrent to these particular defendants, serving the purpose of specific deterrence.  However, the purpose of general deterrence – deterrence of others who may be inclined to engage in similar fraudulent schemes, must be served also.  Having considered all of the circumstances reflected in the record of this case, I conclude that a third tier civil penalty in the amount of $70,000 for each defendant adequately will serve the dual statutory purposes of punishment and deterrence.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Plaintiff's Motion for Determination of Civil Penalty Against Defendant Larry M. Baker** [#130], filed July 7, 2006, is **GRANTED** on the terms stated in this order;

2. That the **Plaintiff's Motion for Determination of Civil Penalty Against Defendant Glen W. Hilker** [#131], filed July 7, 2006, is **GRANTED** on the terms stated in this order;

3. That under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and 17 C.F.R. § 201.1002; 17 C.F.R., Part 201, Subpart E, Table II, a third tier **CIVIL PENALTY** in the amount of seventy thousand ($70,000.00) dollars **IS IMPOSED** on defendant Larry M. Baker;

4. That under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and 17 C.F.R. § 201.1002; 17 C.F.R., Part 201, Subpart E, Table II, a third tier **CIVIL PENALTY** in the amount of seventy thousand ($70,000.00) dollars **IS IMPOSED** on defendant Glen W. Hilker; and

5. That contrary to my direction at the January 5, 2007, hearing, I direct the plaintiff to provide the court on or before **Monday, February 1, 2007**, with a proposed form of judgment, specifying all of the relief granted against the defendants in this case.

Dated January 18, 2007, at Denver, Colorado.

        **BY THE COURT:**

        s/ Robert E. Blackburn
        **Robert E. Blackburn**
        **United States District Judge**